We will hear argument next in Case 2382, Territory of Guam v. United States. Mr. Garr. Thank you, Mr. Chief Justice, and may it please the Court. The United States made a strategic decision to steer the cleanup of the Ordat dump away from CERCLA and to sue Guam under the Clean Water Act instead, no doubt to insulate itself from liability for its own role in building and settlement, nevertheless triggered a CERCLA contribution claim, a claim under the very statute it sought to avoid. That's wrong for two independent reasons. First, Section 113 F-3B of CERCLA requires the resolution of CERCLA liability to trigger a CERCLA contribution claim. Section 113 F-3B is part of an integrated CERCLA contribution provision. Read in context, the phrase resolved its liability naturally refers to CERCLA liability, and that reading squares with traditional contribution principles which require the resolution of a common liability. The common liability that triggers a CERCLA contribution claim is CERCLA liability. The United States' contrary interpretation depends upon construing Section 113 F-3B as if it were an island ripped from its context. It creates the untenable result that the meaning of the phrase resolved its liability changes from one paragraph of Section 113 F to the next, and it manufactures an unprecedented contribution right that does not require a common liability and can be triggered even when the defendant is immune from liability on the settled claim, as the United States was here. None of that makes any sense. And second, the United States' position also fails because the party's Clean Water Act settlement simply does not resolve Guam's liability for a response action. Under the plain terms of the decree, Guam was just as exposed to liability for a response action after the decree as it was before, including under CERCLA itself. I welcome the Court's questions. Mr. Garr, the position of the United States points out an incongruity in your position, which is that you want to imply a term like under CERCLA into Section 113, but you're bringing the case under Section 107 yourself where you don't want to imply such a term. I just wanted to make sure I have your response to that. Well, the question is whether the settlement of the Clean Water Act triggered a contribution right under Section 113F3B, and that depends on whether or not it resolved liability under CERCLA. I don't think there's any inconsistency in our view. Everybody agrees that if the settlement didn't trigger 113F3B, then we are entitled to proceed under Section 107A for the recovery of costs. You articulate this theory of statutory interpretation that centers upon what you call an anchor provision, and I'm not quite sure where that fits in our sort of list of statutory guidelines. I gather it's not quite a defined term, but it's also not a term of art. What's the best authority that you can point me to where you have the kind of analysis that you're asking us to adopt here? Well, I would point you to the cardinal rule that provisions have to be construed in context and in light of their surrounding provisions. So here, 113F3B is part of an integrated CERCLA contribution provision, and it makes sense to read the language, the key phrase, resolved its liability, and how that is used throughout the statute. If you look at 113F, it starts by establishing in F1 the liability that matters, and that's CERCLA liability. And the government doesn't dispute that resolved its liability in F2 means CERCLA liability, and there's no reason it would have any different meaning in F3B. And I think that's perfectly consistent with the rule of context that this always applies, and that the abnormal rule here is the one asserted by the government, which is that you should just take this provision and construe it as if it were an island in a vacuum without regard to its surrounding provisions. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Garr, is there any other instance in which that you can think of where the parties reach a settlement and then they turn around and sue each other over the very same problem? Well, I mean, there's certainly other instances that trigger a contribution claim, Your Honor. And I think, you know, one of the incongruities here is that the United States is not subject to suit under the Clean Water Act. So the whole notion that that settlement would trigger a contribution claim is at war with basic principles of contribution, which this court has recognized Congress adopted in Section 113F. But aren't you going to have a problem even if yet beyond the statute of limitations? If you say that CERCLA is contained, then why would you bring a Clean Water Act claim under CERCLA? Well, I mean, you couldn't, I mean, certainly, I don't think that situation would arise, Your Honor, if I understand the question. I mean, here, the United States could have certainly pursued a claim under CERCLA. It didn't in order to insulate itself from liability, and so it brought the claim under the Clean Water Act. And our position is consistent with traditional principles of contribution, that the settlement of that claim didn't trigger a CERCLA contribution right, which we think falls from the terms of the statute as well. Have there been other instances in which other claims under other provisions were then brought under CERCLA for contribution purposes? Well, I mean, there's some cases that have arisen in the circuits, Your Honor, but I mean, up until relatively recent, I think the position was that you would expect a CERCLA claim to trigger CERCLA liability. I mean, it wasn't until, I think, 2013 that a circuit first adopted the contrary rule, and it just throws a wrench into the whole way in which this provision was intended to operate, and creates numerous anomalies, including giving the phrase, resolves its liability, a different meaning throughout the statute. But the contribution you're seeking comes from the Clean Water Act. That's what I'm getting at. If you're saying the statute of limitations shouldn't apply, it shouldn't be contained under CERCLA, then why would you be bringing a claim from the Clean Water Act for contribution under CERCLA? We're not, Your Honor. We're bringing a cost recovery claim under section 107A of CERCLA. The government's position is that we were required to bring a contribution claim in the wake of the Clean Water Act settlement. So it's really the government's position that creates the anomaly there. Thank you. Justice Breyer? Thank you. If we got to the second question, I think your position is that a settlement requires, for the purposes of this Act, it requires that there be an express admission of liability. Why? I mean, people settle cases all the time where they're not going to admit they were liable, but they might agree to take actions of X, Y, or Z in the future, and somebody might do the same thing here. Right. And that's not our position, Justice Breyer. We don't make the argument that you have to admit that the claim was valid. And here, you know, we don't have a... What is the argument, sir? What we have is a clause saying there was no financial liability, but fundamentally, on the second question, the problem with the settlement is it doesn't extinguish any liability. The settlement explicitly gives the United States the option to pursue, you know, any and all claims under any law for the same conduct and the same actions that were settled here. And that's atypical. The United States... Could they bring it under CERCLA again? Excuse me, Your Honor? Could they bring the CERCLA claim, the CERCLA claim again? Yes. Yes. I mean, in paragraphs 47 and 48... Then what did you get out of your agreement? Nothing? Well, Your Honor, the one thing that it resolved was the Clean Water Act penalties, which are statutory penalties that can add up. But it didn't resolve any liability with respect to a response action. And in fact, you know, once this action was taken to cap the dump, the United States, in theory, could come back and sue under CERCLA the next day and say, well, you know what? We've thought about it some more, and we think you should tear up and remove the waste altogether. This settlement didn't resolve any liability. And again, that's atypical, because if you look at the model consent decree, it includes a covenant not to sue except for future unknown conditions. But the settlement here left Guam exposed to liability under any law with respect to any claim involving a response action. And so for that reason alone, we would urge you to rule for us on the second question presented. I see. Okay. Thank you. Justice Alito? I'd like to ask you a question about what you see as the relationship between Section 113 F-1 and 113 F-3. So 113 F-1 provides a contribution action to offset CERCLA liability and does so, quote, during or following any civil action, close quote, under 106 or 107. Then Paragraph 2 makes it clear that those who settle their liability won't be subject to a contribution action for the matters addressed in the settlement. And then what does 113 F-3B add? Aren't judicially approved settlements already covered by the phrase following any civil action in Paragraph 1? Right. So, Your Honor, what it would cover is a situation where there's no pending litigation. The parties voluntarily agree to settle with the United States or a state, and then they go to court to judicially approve that. And so I think in that instance, it would make sense for Congress to spell out what happens with respect to such a settlement. And I would add, with respect to the superfluidity argument by the United States, I mean, this also covers administrative settlements. And so that wouldn't be covered at all by F-1. There would be no pending litigation. I think once Congress is going to spell out what happens in the case of administrative settlement, I think it only makes sense for it to spell out what happens in the case of a judicially approved settlement where there had been no prior litigation. And if that's a little bit belt and suspender, that's something that this court has recognized Congress has done in circling. And I think it made perfect sense, Your Honor. What should we make of the fact that Paragraph 3C, F-1 3C, refers to, I'm sorry, F-3C, refers to any contribution action brought under this paragraph and sets its own requirement that shall be governed by federal law. If Congress meant for all the details in Paragraph 1 to carry through to the other paragraphs, including 3, why would it have needed to include that language? Well, I mean, I think what it does is it tells you that the circle of contribution claim is a other provisions. And that's one of the problems that the state amici address, and that the government's interpretation would mean that anytime you settle a non-circular claim under state law, it would trigger this federal contribution claim and therefore override states' different cost recovery regimes, which is a direct intrusion that this court would not presume that Congress intended unless it said so. So I think the fact that Congress spelled out that contribution action is brought under federal law, you know, is quite significant in pointing to the conclusion that Congress didn't mean this strange contribution right that the United States says it created. All right. Thank you. Justice Sotomayor. Mr. Garr, I think it's your second question presented that may have created my colleague Justice Breyer's confusion because it was my own. Your question asks whether a settlement that expressly disclaims any liability determination and leaves the settling party exposed to future liability can trigger a contribution claim under Circular Section 113F 3B. Settlement agreements often can disclaim liability but resolve liability at the same time. Many settlement agreements will say, I don't admit liability, but I will resolve my liability under your claims, under the Clean Water Act. That's what happened here, correct? Well, yes and no. I mean, they did say that there was no finding of liability, Your Honor. But it still resolved the Clean Water Act claims, correct? It didn't resolve liability, Your Honor. It resolved the claims, counsel. Not the liability, but the claims, correct? Well, no. I mean, the claims themselves were conditioned on compliance with the decree. Counsel, you're squibbling with words. You got some value out of it. You got away from some damages that you were fearful of. So it resolves something, correct? You're absolutely right. If that settlement had said, this agreement resolves Guam's legal obligations under all federal environmental statutes. By the way, that's very comparable to most general releases. This settlement resolves all claims arising from, related to, whatever the general release like that. Would you have any arguments in this case? The argument would be much different. And I think that probably would resolve liability. And that's what's missing here, Your Honor, is a general release. It never resolves liability, because those general, counsel, Mr. Garrard, those general releases, that's your strongest argument. I agree. I mean, I think all the provisions work together, Your Honor. But I agree, the release, the lack of any covenant not to sue, and the way in which the settlement preserves the right to bring suit under any claim. I mean, that's very unusual, and that defeats the finding that it resolves liability. The resolution of liability is a two-way street. Guam agreed to do some things here, but the United States never relinquished its claims to sue Guam for the very same conduct, the very same actions here, and that's made explicit in the decree. The only thing that's... That's the great inequity here, which is the U.S. retained the right to sue you under the Clean Water Act. So your argument is we should have the right to sue them, correct, for contribution? Not, Your Honor, not just the Clean Water Act, but under any law. I'm sorry, the underserved... Paragraph 48. Right. Counsel, please. Thank you. Thank you, Your Honor. Justice Kagan? Mr. Garrard, I guess I'm wondering whether your anchoring argument is really just an effort to make lemonade out of lemons. And the reason I say that is because it's usually considered a problem in statutory interpretation when one provision, especially very close to another provision, has very different language. So, you know, F-1 says liability under 9607 or 9606, and then F-3B does not say that, but instead uses a very different formulation, drops the section numbers, and says liability for some or all of a response action. So isn't the kind of obvious argument here that F-3B meant something different from F-1? Right, and that's the reasoning of the D.C. Circuit, and what it said was F-1 uses circular language and F-3B doesn't. And it was incorrect about that because F-3B does use circular-specific language. It uses the terms of our response action and response cost, which actually track the references to 106 and 107 in F-1. But I think, Your Honor, you know, fundamentally what they skipped over is F-1 spells out that the liability is under circular, and then every other provision here within this 113F uses the phrase resolved its liability. And the government doesn't dispute that in F-2, when Congress said resolved its liability, it meant circular liability. And only when you get to F-3 that the government says resolved its liability doesn't mean circular liability. It means liability under any law you could think of. Well, why do we necessarily think that F-2 is circular liability? F-2 says liability about matters addressed in the settlement. I mean, you could think that F-2 is more like F-3 than it is like F-1. Well, I mean, you should ask the government that question because it's never disputed our position that it has to be circular liability. If it were otherwise, then F-2 would create this extraordinarily broad immunity that a party could settle any claim under any statute and yet receive this immunity from contribution. The government has never taken that position. I mean, look, F-1 tells you that the liability that matters is circular when people are suing each other, and the other provisions deal with the question of what happens when there's a settlement. And all of this is against the backdrop of common law contribution principles. Is it possible, Mr. Garth, that it makes perfect sense to understand F-1 differently from F-3B? Just because circular is a statute that's designed to encourage settlements, and if you take this settlement provision to be broad, if F-3B is broader, it would suggest that it would encourage more settlements. Well, I don't think it's going to encourage more settlements, Your Honor. People have to be worried about settling non-circular claims triggering circular rights. And I think all this has to be construed against common law contribution principles, which require a common liability. And the common liability here is circular liability. And this Court has held that F-113F is construed against common law principles, and that rule itself requires a conclusion that Congress meant the obvious. Thank you, Mr. Garth. Thank you, Your Honor. Justice Gorsuch? Mr. Garth, just to be clear, there's no need for this Court to touch the 107 question, is there? No, Your Honor, there's not. I mean, that's a separate issue that would go forward on remand. And so whether you succeed or not is immaterial for the purposes of this appeal? Right. The fundamental question here is whether or not the Clean Water Act settlement required us to bring a claim under 3B, 113-3B. Right. I understand why the SG wanted to inject it in this case, but I also want to just be clear that we don't have to touch it. That's absolutely right, Your Honor. Okay. And then can you explain for a moment your argument about the preemptive effect of the government's position for state contribution laws and what that would look like? Sure, Your Honor. I mean, and it gets back to Justice Alito's point that in 113-3C, the Congress provided that a contribution action brought under this paragraph shall be governed by federal law. So that means that if a person settles a claim other than under CERCLA, under a state provision, that that would trigger a federal contribution right, which would preempt the alternative regimes that states across the country have adopted to deal with by the states. Spells this out clearly. I mean, that's a direct intrusion into state autonomy that you wouldn't presume that Congress intended when it adopted a CERCLA contribution provision. Well, I guess I just want to understand better the magnitude of that, the consequences and practical consequences of that, and why we wouldn't assume that CERCLA meant to do exactly that. Sure, Your Honor. And again, I think this gets back to what it means to have a contribution claim. And ordinarily, you would require a common liability. So you would set a liability for this, and you'd have a contribution claim under the same liability. And what the government's interpretation does here is to import this discrete CERCLA contribution claim into other federal statutes and to override other state laws that deal with cost contribution. I mean, Congress ordinarily doesn't create a contribution right, but under the government's interpretation, the settlement of a claim other than CERCLA would trigger this contribution right under CERCLA and effectively import a contribution regime into other provisions under federal law as well as state law. And that's very disruptive, and it's hard to believe that Congress intended it. And all of those problems are resolved by giving this contribution provision its normal meaning of requiring the resolution of a common liability, which here would be CERCLA liability. Thank you. Justice Kavanaugh? Thank you, Chief Justice, and good afternoon, Mr. Garr. Do you, or can you give me problems that you think would result outside of this case if we adopted the government's interpretation? Well, sure, Your Honor. I mean, at first, it's the trap for the unwary that, you know, is epitomized by this case, that you would be settling a claim under a different statute to which the United States itself enjoys immunity, which is true of the Clean Water Act, and that somehow that that settlement would trigger a CERCLA contribution right. So that in itself is a problem that I think you would avoid unless Congress was clear. Another problem is, you know, the problem with displacing contrary federal and state cost recovery regimes, which I was discussing with Justice Gorsuch. I mean, I think it also creates this unprecedented contribution right not known to the common law, where you don't need a common liability, where the resolution of liability under one statute somehow triggers contribution right under a different statute. I mean, all of that is problems that this court can avoid by simply construing this CERCLA contribution provision to be tied to CERCLA liability. Thank you, Mr. Garr. Justice Barrett? Good afternoon, Mr. Garr. I have a question just about how, and I'm sure this comes of my ignorance of CERCLA actions, but how this works. So 113F3B refers to response action, you know, which is defined in, you know, 106 and 107, which talks about the ability of, you know, the section that you want to sue the United States under your ability to recover action, costs of an action. So if there's not been an action, so there's been no judicially determined amount of response costs, and there's been no administrative or judicially approved settlement, how does the court go about, or how do the parties go about deciding whether costs undertaken actually were response costs? Well, Your Honor, I hope this is responsive, but what would happen is, like, typically you'd either have litigation among the parties over CERCLA liability, and that would trigger the contribution right in F1, or the parties could voluntarily settle with a state authority or the United States, in which case they could spell out specific actions. You know, ordinarily the EPA model itself would spell out that those actions are taken under CERCLA. Here, the United States proceeded under the Clean Water Act, we think pretty clearly because it was immune from liability itself under that act, and that's really what creates the, you know, unusual circumstances leading to the United States position here. Well, I guess what I'm getting at is trying to figure out how CERCLA specific this term, you know, response costs is. I mean, because as defined in CERCLA, you know, the United States is right. It's pretty broad. It can encompass a lot of different things. So what makes something a response cost to CERCLA? As opposed to, you know, just a cost for something that wouldn't be covered by CERCLA, and how do you know, given the broad definition of response costs and the fact that the costs are undertaken not pursuant to any sort of EPA rule necessarily? Right. So you're right. I mean, response action and response costs is a well-known CERCLA term of art, and our position under 13BFB is, like, what's the liability for that? But what I would say, Your Honor, one thing that's critical is in order to qualify as a response action or response cost, the action or cost has to be incurred in connection with the release of hazardous substances. And another thing that's unusual about the Clean Water Act settlement here is it never identified any hazardous substances included within the definition of response costs or action under CERCLA. It only identified pollutants, the discharge of pollutants under the Clean Water Act, which is a different term and doesn't necessarily include hazardous substances under CERCLA. And that's another reason why the resolution of the Party's Clean Water Act claims could not have resolved liability for a response action, a term defined by CERCLA. Thank you, Mr. Garr. A minute to wrap up, Mr. Garr. Thank you, Your Honor. In our view, reading Section 113F3B in context in the light of traditional principles of contribution compels Guam's interpretation. But taking a step back, here's what's at stake. Adopting Guam's interpretation would ensure that CERCLA's contribution rule is CERCLA-contained. It would give the phrase, resolved its liability, the same meaning throughout Section 113F. It would ensure that Section 113F3B does not indirectly override states' own cost recovery rules, and it would eliminate a trap for the unwary among those settling non-CERCLA claims. Conversely, it's hard to see any real negative impact to the United States from ruling in Guam's favor in this case, other than having to pay its fair share for the ODOT cleanup. Indeed, EPA's own model settlement agreements give the United States a ready-made solution should it lose this case. In sum, Guam's interpretation is not only right, but is far better for the implementation of CERCLA in the long haul. Thank you. Thank you, counsel. Mr. Suri. Mr. Chief Justice, and may it please the Court, I would like to make a brief comment on CERCLA's contribution claim, regardless of whether the underlying claim arose under CERCLA or some other statute. This follows most naturally from the meaning of the words, liability for a response action. The term response action is defined in CERCLA in a way that does not depend on which underlying statute that action was undertaken in order to comply with. In addition, CERCLA often uses the term response action to include acts taken under other statutes. If Congress wanted to limit this provision to CERCLA liability, it could easily have said so. There are many other provisions of the Act that use terms such as settlement under this Act, liability under this Act, or response action under this Act. There's no such limiting language in the provision at issue here. Turning to the second question, the settlement here resolved Guam's liability. A party resolves liability if it settles its legal obligation to perform or pay for a response action. That's exactly what the settlement here did. I welcome the Court's questions. Counsel, looking at F2, it's entitled settlement, the first sentence there begins, a person who has resolved its liability to the United States. Is that liability for anything or is that liability under CERCLA? It's neither of those things, Mr. Chief Justice. It's liability for a response action. Now, I acknowledge that F2 is probably the most difficult provision for us to deal with, but let me explain why it's justified to infer the term for a response action in F2 in a way that it's not justified in F3b. Before you do that, you're explaining the difference between two identical phrases, right? No, they're not. The one resolved its liability to the United States under 2 and resolved its liability to the United States under 3b. No, they're not identical phrases. F2 is just resolved its liability to the United States and F3b is resolved its liability to the all of a response action. And that's the first difference I wanted to focus on, which is that phrase for some or all of a response action tells us what the nature of the liability must be in F3b. F2, however, is simply silent about the nature of the liability. It contains a gap and therefore it's justified to look at context to fill the gap. The second point is that it's almost that there's an absurdity argument rather than textual argument in F2 because it seems unthinkable that resolved its liability means any liability whatsoever under the sun. There's no such concern in F3b. Well, F3b doesn't, I mean, has the language that you mentioned and F2 doesn't because we're not talking about response actions under 2, right? Although 3b is talking about response actions. I agree, Mr. Chief Justice. What that proves is that the presumption that the disparate inclusion and omission of language suggests a difference in meaning is not absolute. It can be overcome by competing indications in the opposite direction. And we do think there are competing indications in F2, but there aren't in F3b. Thank you, counsel. Justice Thomas. Thank you, Mr. Chief Justice. Counsel, I admit to being somewhat confused by this, primarily because of the earlier Clean Water Act settlement. Do you think that you could have a circular recovery for, say, penalties under other environmental provisions? No, Justice Thomas. The circular recovery would only be for response costs or response actions, not for penalties under other statutes. Well, could you have brought a circular action against Guam after the 2004 settlement? We do not believe that the settlement here would have allowed us to bring such an action against Guam. And I could walk you through the relevant provisions if you'd like. Yeah, I would. They're on page 166A of the petition appendix, paragraphs 45, 46, and 48. Paragraph 45 says that the settlement settles the claim in the decree and under the background law of preclusion and judgments, two claims are considered the same if they arise out of the same transaction or occurrence, even if they involve different statutes. This is confirmed by paragraph 46, which says that the decree should not be interpreted to limit the United States' right to bring claims involving unrelated violations. That necessarily implies that the decree does limit the United States' right to bring claims for related violations. There's also Justice Breyer's point that he raised in the question, which is the decree simply wouldn't make any sense if Guam didn't get anything out of it. Now, they're relying on paragraph 48, but the first words of paragraph 48 are, except that's specifically provided herein, and as I've just explained, the decree does specifically provide herein for the elimination of the United States' right to bring related claims. Thank you. Justice Breyer? Well, the trouble I'm having on your side is I can't get too far using the language of the statute. I mean, sure, you could read it your way. Response action, state or federal, brought under any statute dealing with a response action, which is defined in 2324. It could mean that, but it could also mean circular actions. Okay? It could mean either. And if I look at the definition of response, it starts by saying, for purposes of this subchapter. Then I look at the definition of response, and it's about 450 to 500 words, including all kinds of things. I'm tempted to say anything under the sun. That isn't quite true. But all kinds of technical things, perimeter protection using dikes, you know, collection of leachate. How do I know whether a state has a collection of leachate law that has nothing really to do with circular? And I don't know, but there could be a lot of lawyers who have thousands of cases that involve some of these 450 or 500 words under some law of a state or other federal law. Do they know they have only three years to ask for contribution? I mean, this is a pretty tough reading, and a lot of people just won't know they have only three years. They might think they had seven or something else. So what kind of a boundary is this if we read it your way? I mean, what statutes are involved? Have you looked up all the statutes in the states that might use words like any of the 450 or 500 that are there in the definition? Now, you see the thrust of my question. Yes, Justice Breyer. Let me provide some reassurance that our position doesn't lead to the kinds of practical problems that you're worried about. The first point is that while response action is indeed a broad term, it is not an unlimited term. The court made that point just last term in the Atlantic Richfield opinion when it said not everything under the sun qualifies as a response action. The second answer is that a lot of these cases involve sophisticated parties, governmental entities, territorial or state governments, and large corporations. These are the kinds of entities that can be expected to have good legal advice about how environmental laws interact with CERCLA. Finally, to the extent that there are case-by-case fairness problems, those should be addressed under frameworks such as equitable tolling, not by distorting the meaning of the substantive statute itself. Thank you. Justice Alito. Counsel, Guam's argument in very simple terms is basically this. We're a small island, and the only reason, and while we may have contributed to part of the problem with this dump, the Navy contributed quite a bit too. But in any event, all of this, the respective liability of Guam and the United States should be adjudicated under CERCLA, where the United States could bear some of the cost. But the United States has cleverly proceeded against us under the Clean Water Act for the purpose of avoiding that. Do you have an answer to that? Yes, Justice Alito. The first answer is that although Guam gets a lot of mileage out of its allegations that the Navy contributed to the TorDOT dump, and although we're required to accept those allegations as true at this motion to dismiss stage, we don't actually think the allegations are true as a matter of fact. Secondly, EPA had legitimate reasons in 1988 for deciding not to proceed under CERCLA. By that time, the Clean Water Act process had already been underway for a couple of years, and EPA explained how the Clean Water Act procedure would, as it were, kill two birds with one stone. It would solve both the CERCLA problem and the Clean Water Act problem, making CERCLA remedy unnecessary. Now, Guam says that it should be allowed to recover under CERCLA, and we agree with that. We just think the recovery should be under the contribution provision rather than the cost recovery provision. Indeed, if you step back and think about it, Guam's action, as it were, sounds in contribution. They said they have been forced to bear an inequitable share of the costs, and the United States should bear a portion of that responsibility. That fits to a T what a contribution action is meant to be about. Let me come back to the subsection 2 argument. Doesn't the way that's worded show that all of these provisions are meant to operate together? Doesn't that substantiate Mr. Gar's anchoring provision argument clearly? I guess you can see this. F2 doesn't refer to liability to the United States by anybody for anything. It has to do presumably with liability under CERCLA 9607A, right? I agree that these provisions are meant to work together. That doesn't override the fact, however, that the two provisions at issue here, F1 and F3, have different language. One says under section 106 or 107, and the other doesn't, and the court should give effect to that difference in language. Well, your argument is that if subsection 3 didn't refer to response costs, to a response action, it would be read like 2, but by putting that in, that was a signal that Congress wanted to pick up liability under the Clean Water Act, right? It's a signal that Congress wanted to pick up liability for response costs or response actions without regard to the statute under which that arose. That makes sense because Congress is trying to encourage settlement. It makes sense that Congress would provide a broader contribution right for settling parties than for non-settling parties. Thank you. Thank you. Justice Sotomayor? Counsel, I believe I'm right because I've been told this in the briefing, that the word responsive action is not used in any other statute. Am I correct? Besides CERCLA? No, that's not quite correct. There are state statutes, baby CERCLAs, as they're sometimes called, that copy the term response action. Copy it in their own statutes. Correct. Now, counsel, you know, one could be prompted to build a lid for a dump in response to CERCLA, or one might do so in response to a nuisance claim in state court. Both would be response actions. Why shouldn't it matter why a person initiates an activity? It seems to me, just for the reasons Justice Alito just said, the simplest reason, if response action is CERCLA specific in terms of all of the activities that it can be, why should we build that into a different act like the Clean Water Act? By the way, I thought that the harm addressed in the Clean Water Act was releasing pollutants without a permit. That's a very different harm than what CERCLA looks to, which is releasing hazardous pollutants, with or without a permit. You're still prohibited from doing that. So those aren't those two different harms, and why should one extinguish or create an obligation to claim under another? To take the first question first, the best answer is the list of provisions we've provided at pages 13 to 14 of our brief. These are provisions that show that CERCLA uses the word response to refer to actions taken under other statutes, including the Clean Water Act itself. This is on page 14, section 9604 K-12. Now, as for your question about the harms, we don't agree with the characterization that these harms are fundamentally different. EPA itself determined when deciding not to proceed under CERCLA that the Clean Water Act remedy would address both the CERCLA harm and the Clean Water Act harm. But the release didn't say that. I agree, but the question is... And you could have done that just as easily, correct? Certainly, but that's not what... Thank you, counsel. ...the statute requires. Justice Kagan? Suri, I just wanted to make sure I understood your answer to the Chief Justice about the meaning of F-2. If I understood you right, you acknowledged that there was a gap in F-2, in other words, that gap should be filled, is to say liability for a response action. Is that right? That's correct, Justice Kagan. So you're essentially making F-2 the same as F-3B. Is that right? That's correct, and we think one contextual justification for that is F-3B itself includes a reference back to F-2. And, Mr. Suri, I asked Mr. Garr about this, and Mr. Garr says that your litigating position up till now has been the opposite, that F-2 was more like F-1, that it's CERCLA liability. No, I think the truth of the matter is that we have not said anything about F-2 until this point. We certainly haven't conceded that F-2 is like F-1. Okay. So if you're saying F-2 and F-3B go hand in hand and they're different from F-1, I guess the question that follows is why? What's the theory on which in F-2 and F-3B Congress broadened out liability? Why did Congress treat F-2 and F-3B differently than F-1? Is that the question? That's the question. I can think of a few plausible reasons, although I don't know which one is true as a matter of fact. The first is that Congress meant to encourage settlements and provided broader rights with respect to settlements than with respect to non-settling parties. So when I suggested that to Mr. Garr, Mr. Garr told me I was wrong, that it would discourage settlements if you read it your way because everybody would be completely uncertain about what they were liable for, so then they would never settle. No, I think that Congress clearly was providing a benefit in F-2 and F-3B. It was granting parties more rights like protection from contribution claims and the ability to bring additional contribution claims. Now, it's true that in the particular circumstances of this case, that may have turned out to be more a curse than a blessing, but that's because of the particular factual circumstances of this case. That's not necessarily true as a general matter. I interrupted you before. You were saying there were some other theories about why F-2 and F-3 would be different from F-1? Yeah, there are two more. The second is that when you have a court judgment, it's easy to determine which section a particular claim arose under, but in the context of a settlement, that might not be something the settlement explicitly discusses. It might just say, here are the actions that the party is required to take. It might be administratively easier, therefore, to focus the contribution inquiry on that rather than the section under which it arose. And the final reason is that F-1 was written by the House Energy and Commerce Committee and F-3B was written by the House Judiciary Committee. They may have simply had different ideas about how this provision should operate. Thank you, Mr. Sari. Justice Gorsuch? Good morning. I'd like to ask you a question about preemption. As I understand the government's argument, 3B, read 3B, liability for response action to include settlements with states under state law, and then 3C, read all those settlements now have to be governed by federal law, and just like that, pretty much every state contribution regime is preempted. We have a brief from, I think, about 25, 26 states and territories, including some very different ones of everybody from Massachusetts to Wyoming, saying that that would seriously impair state cleanup efforts to federalize and preempt every settlement, if you're going to read response action quite so broadly, and that this is going to wind up impairing cleanup efforts rather than advancing them. What's your thoughts about that? Justice Gorsuch, the premise that our position has that preemptive effect is incorrect, and there are two provisions of the statute that show that it's incorrect. The first is the last sentence of F-1, and the second is the last sentence of F-3C. So the last sentence of F-1 says, nothing in this section, that's the whole subsection, not just F-1, shall diminish the right of any person to bring an action for contribution. Oh, no, sure. I know we have all these savings clauses everywhere, or they're all throughout CERCLA, but as I understand your reading of B and C under 3, you read B to be very broad, and C to then say they have to be governed by federal law. So maybe you could turn your attention there, if you have some answer to that problem. Certainly do. Any contribution action brought under this paragraph shall be governed by federal law, is what C says, not any contribution action concerning the subject matter. So, of course, if a contribution action is brought under this paragraph, it's governed by federal law. But you, again, you've read the paragraph, which includes B, I think you mean include B, very, very broadly. So, I mean, we're just bouncing through the statute, and we're not getting to the core of the problem. No, Justice Gorsuch. Our point is simply, if a party wants to bring a state law action under state law, he can do that, and it's governed by state law. If he wants to bring it under this paragraph, it's governed by federal law. There's no preemption there, because there are both avenues that are open to those parties. Now, it's true, a party could choose to bring a federal contribution claim with respect to a state law liability under our interpretation, but that doesn't preempt the state. That just means that there are two options open to the settling party. Thank you. Justice Kavanaugh. Thank you, Chief Justice. Good afternoon, Mr. Suri. I think you said earlier that if Congress wanted to limit 113 F3B to CERCLA, it could have said so, and obviously, as is often the case, you could flip that question around and say if they wanted to, if Congress wanted to usher in your position, they could have said so. And so I'm thinking about that framing of what's more likely here. What do you make of your opposing counsel's suggestion that you're cutting off a right to sue here, that there's a lack of fair notice, trap for the unwary, and I think that picks up also on some of Justice Breyer's questions. In other words, in thinking about how to think about what you're characterizing as silence here, let's just assume for the second that it is, we should think about that consideration and how to interpret that here. Justice Kavanaugh, there won't be a trap for the unwary going forward because the rule established by this court will apply across the country and everyone will know what they have to do. Do you agree that it could be a trap for the unwary, though, having, looking backwards? I agree that's a potential problem, but that's always the case with any case of statutory interpretation. You have uncertainty about what the statute means before a court comes in and resolves the uncertainty. There's no reason to adopt what we think is the less textually plausible argument. If I could say one more word, however, contesting your premise of statutory silence. If a provision is silent, the normal rule is to apply it according to its terms and not to infer an unstated limitation. So, if you think the textual arguments are in equipoise, you should go with what the most natural reading of the term response action is, and that doesn't include any qualifiers such as under CERCLA. Thank you, Mr. Suri. Justice Barrett. I have no questions. A minute to wrap up, Mr. Suri. I have nothing further, Mr. Chief Justice. Thank you. Rebuttal, Mr. Garr. Thank you, Mr. Chief Justice. With respect to F-2, this is a brand new argument, as counsel acknowledged today. We argued in our brief that F-2 had to be interpreted to mean resolved CERCLA liability. The government was silent on that in its brief, and with respect, I'm not sure it should be able to introduce new arguments at oral argument. Having said that, its position is telling. It's asking this court now to copy and paste words from F-3B into F-2, which only makes the problem worse. The key term is resolved as liability. Is it CERCLA liability, or is it liability under any other law? Of course, it's CERCLA liability in F-2, and my friend wanted to devolve into this statutory history here. If you want to go there, as we say on page 30 of our brief, the legislative history makes clear that Congress had in mind CERCLA liability. Secondly, the consent decree explicitly reserves the United States' right to bring any claim under any law, including a CERCLA claim. My friend skipped over paragraph 47 of the decree that explicitly says that. I couldn't agree more with Justice Sotomayor that the harm addressed by the Clean Water Act, the discharge of pollutants into the water in violation of a permit, is very different than the harm alleged by CERCLA or dealt with by CERCLA, which is hazardous substances in the ground, which itself is significant under common law contribution principles. The bottom line is that the United It sued Guam under the Clean Water Act in order to insulate itself from liability for its own role with the ORDOT, allegations that must be accepted as true, and now it wants to block Guam's actions to recover a portion of its cleanup costs by saying that the party's settlement of the Clean Water Act claim somehow barred a CERCLA contribution claim. There's no basis in CERCLA, the common law of contribution, or anything else the government relied upon in its brief or today at oral argument to allow the United States to get away with that ploy here. Thank you. Thank you, counsel. The case is submitted.